# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| DARIUS DEONTREA LOPEZ | ) | 5:22-mj-1095-PRL |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 13, 2021 in the county of Citrus in the Middle District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1029(a)(1) | Knowingly and with intent to defraud produces, uses, or traffics in one or more counterfeit access devices |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Robert Rudolph*
Complainant's signature

Special Agent Robert Rudolph, GSA-OIG
Printed name and title

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) before me this 1st day of July 2022.

Date: 07/01/2022

Judge's signature

City and state: Ocala, Florida    Philip R. Lammens, U.S. Magistrate Judge
Printed name and title

STATE OF FLORIDA                                    CASE NO. 5:22-mj-1095-PRL

COUNTY OF MARION

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Robert Rudolph, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a sworn special agent with the United States General Services Administration – Office of Inspector General ("GSA-OIG"), assigned to the Southeast and Caribbean Regional Office of Investigations. My duties and responsibilities as a GSA-OIG special agent are to investigate allegations of fraud, waste, and abuse in connection with GSA's programs and operations. I have been a GSA-OIG special agent since August 9, 2015.

2.      My training includes completing the Criminal Investigator's Training Program held at the Federal Law Enforcement Training Center located in Glynco, Georgia. I received additional training when I later attended the Inspector General Criminal Investigator Academy. This included specific training in the preparation, presentation, and service of criminal complaints, and I have been involved in the investigation of numerous types of offenses against the United States. I have also been trained in the preparation, presentation, and service of arrest and search warrants, and have executed both arrest warrants and search warrants in previous cases. I am a Certified Fraud Examiner through the Association of Certified Fraud Examiners, a professional organization that requires testing on many topics. I hold a

bachelor's degree in accounting from Stonehill College and a master's degree in Banking and Financial Services Management from Boston University.

3. The information set forth in this affidavit is based on my personal knowledge, review of records, documents, and other evidence obtained during this investigation, as well as information conveyed to me by other law enforcement officials and private persons. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only and are not intended to be a verbatim recitation of such statements.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support the issuance of a criminal complaint, I have not included details of all aspects of my investigation. I have set forth only those facts necessary to support a finding of probable cause that the following violation was committed by **Darius Deontrea LOPEZ** on or about April 13, 2021: 18 U.S.C. § 1029(a)(1), relating to knowingly using a counterfeit access device with intent to defraud.

## Statutory Authority

5. 18 U.S.C. § 1029(a)(1) makes it a criminal violation for anyone to use a counterfeit access device with intent to defraud. I know from my training and experience and review of relevant law that the purchase cards (described below) used by **Lopez** in this case qualify as access devices. Likewise, based on the appearance of

the cards used by **Lopez** to make the unlawful purchases, the access devices were counterfeit.

### Probable Cause

*GSA SmartPay Program Background*

6.	The United States General Services Administration ("GSA") SmartPay Program was established in 1998. It is the world's largest government charge card and commercial payment solutions program. GSA SmartPay provides services to more than 560 Federal agencies, organizations, and Native American tribal governments. Its payments solutions enable authorized government employees to make purchases on behalf of the Federal Government in support of their agency or organization's mission.

7.	GSA SmartPay purchase cards are easily identified as red and white purchase cards. The front of the card has a GSA logo and a left vertical gray stripe at the end. On the left vertical stripe, the words "FOR OFFICIAL GOVERNMENT USE ONLY" are imprinted in white.

*Ag-Pro Transaction*

8.	On or about April 14, 2021, officers with the Citrus County Sheriff's Office (CCSO) were dispatched to a tractor dealer, Ag-Pro, located in Crystal River, Florida, in the Middle District of Florida. An employee reported that a man, later identified as **LOPEZ**, purchased landscaping equipment using multiple credit cards

on or about April 13, 2021. The bank notified the employee that the card numbers **LOPEZ** used were reported stolen.

9. The CCSO officers watched Ag-Pro's video surveillance footage depicting **LOPEZ** purchasing the landscaping equipment with the stolen cards. The employee provided the officers with a photograph of **LOPEZ** from the store. The photograph shows **LOPEZ** posing in front of the landscaping equipment he purchased with stolen cards. The employee gave the officers a copy of the Florida driver's license **LOPEZ** used during the transaction. The name on the license was "Ontarius Warren." The Florida Department of Motor Vehicles has never issued a license number to a person named "Ontarius Warren" with a date of birth depicted on the license **LOPEZ** used.

10. The employee then told the CCSO officers that **LOPEZ** texted him advising that he was going back to Ag-Pro to pick up keys he had forgotten in the store. The CCSO officers were in Ag-Pro when **LOPEZ** arrived, and they questioned him about the cards he used to purchase the landscaping equipment the day before. **LOPEZ** insisted that his brother was the person who purchased the items and the counterfeit license belonged to his brother.

11. CCSO officers discovered **LOPEZ** had an open warrant for a probation violation. The officers placed **LOPEZ** in handcuffs and searched him. Within **LOPEZ's** wallet, the officers located the driver's license with the name "Ontarius

Warren," which was previously described above. **LOPEZ** also had multiple credit cards in his wallet bearing the name "Ontarius Warren."

12. The officers read **LOPEZ** his *Miranda* rights, and **LOPEZ** freely and voluntarily waived his constitutional rights. The officers showed **LOPEZ** the photograph depicting him in front of the landscaping equipment, and **LOPEZ** confirmed that he was the person in the photograph. **LOPEZ** then quickly recanted his statement by saying his brother was the person in the photograph. **LOPEZ** later admitted to the officers that he went to Ag-Pro and purchased the landscaping equipment. While being transported to the jail, **LOPEZ** claimed he did not know why the name "Ontarius Warren" was on the driver's license. He stated that his friend chose the name. **LOPEZ** claimed that he was given the wallet containing the license and cards. He said he was told to buy the landscaping equipment and bring it to his friend for $1,000. Law enforcement was unable to recover the stolen landscaping equipment.

13. On or about June 17, 2021, I reviewed still photographs of the April 13, 2021 transaction. I observed **LOPEZ** in a photograph sitting on a trailer connected to a Dodge Ram pickup truck. The trailer contained the stolen landscaping equipment. According to records available to law enforcement, the pickup truck was a rental vehicle.

14. On or about September 14, 2021, law enforcement obtained invoices associated with the transaction on or about April 13, 2021. I interviewed the

employee who conducted the transaction with **LOPEZ**. He confirmed that the total amount charged was $27,008.50. I reviewed the invoices and was able to determine that four different credt cards ending in 3712, 0566, 7660, and 0174 were used to purchase the landscaping equipment.

15. On or about October 19, 2021, I interviewed another Ag-Pro employee. When **LOPEZ** arrived at the store to purchase the landscaping equipment, he introduced himself to this employee as "Ontarius Warren." **LOPEZ** told the employee that he had been in prison, and he recently received money. **LOPEZ** stated that he wanted to purchase the equipment to go into a landscaping business. When trying to purchase the equipment, **LOPEZ** initially tried to read the card numbers to the employee. The numbers would not go through. **LOPEZ** then provided the cards to the employee, and the transaction was successful. **LOPEZ** told the employee that each card had a $5,000 limit. The employee noticed the cards appeared to be prepaid cards.

*Counterfeit and Unauthorized Access Devices*

16. Based on my training and experience, I know the manufacture of counterfeit credit cards requires the use of various pieces of specialized equipment including embossing machines, heat foil tippers, printers capable of printing on plastic card stock, and plastic magnetic stripe cards. I am also aware that plastic magnetic stripe cards such as gift cards and prepaid cards are commonly used to

manufacture counterfeit cards because they can be easily purchased at a number of retail establishments.

17. I reviewed the credit cards CCSO officers found in **LOPEZ's** wallet. **LOPEZ** was in possession of two cards with account numbers ending in 3712 and 0566. Two of the same account numbers were used to purchase the landscaping equipment on April 13, 2021. These two cards were noticeably altered. One of the cards had the account number ending in 3712 embossed on the front of a Trans@ct by 7-Eleven, prepaid debit card. The other card had the account number ending in 0566 and the name "Ontarius Warren" embossed on the front of a PayPal prepaid debit card. The embossed account number was crooked on the card. The account number contained in the track data on the magnetic stripe of the PayPal prepaid debit card was a different account number than the one embossed on the front of the card. I performed searches of the account numbers embossed on the front of these cards. The numbers belonged to the U.S. Bank. **LOPEZ** was also in possession of nine additional cards, which were embossed with account numbers from U.S. Bank, Synchrony Bank, and Morgan Stanley.

18. I obtained information from U.S. Bank on the two purchase card account numbers used to purchase the landscaping equipment ending in 3712 and 0566. These account numbers were GSA SmartPay purchase cards issued to two United States Department of Agriculture ("Department of Agriculture") employees. I also obtained additional information which revealed the two other purchase cards

ending in 7660 and 0174 that were used to purchase the landscaping equipment were issued to two additional Department of Agriculture employees. Law enforcement interviewed all four employees who confirmed **LOPEZ** was not authorized to use their purchase card information. The use of these cards also affected interstate commerce as they were issued to individuals located in states outside of Florida.

### Conclusion

19. Based on the forgoing, I respectfully submit that probable cause exists to believe that on or about April 13, 2021, **LOPEZ** committed the following violation within the Middle District of Florida: 18 U.S.C. § 1029(a)(1), relating to knowingly and with intent to defraud produces, uses, or traffics in one or more counterfeit access devices.

This concludes my affidavit.

Respectfully submitted,

*Robert Rudolph*

Robert Rudolph, Special Agent
U.S. General Services Administration
Office of Inspector General

*Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) before me this __1st__ day of ____July____ 2022.*

Philip R. Lammens
United States Magistrate Judge